UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

VINCENT CORTESE, on behalf of
himself and all other similarly situated,

                          Plaintiff,

    -against-

EDGE SOLUTIONS, INC.,

                         Defendant.
----------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 04-0956 (DRH)(ARL)

**APPEARANCES:**

**For the Plaintiff**
Gregory Law Firm, P.C.
46A Mt. Laurel Avenue
Birmingham, AL 35242
By: Steven P. Gregory, Esq.

Law Offices of James D. Smith, LLC
2820 7th Street
Tuscaloosa, Alabama 35401
By: James D. Smith, Esq.

Leon R. Storie, Esq.
1800 Hackberry Lane, Suite A
Tuscaloosa, AL 35401

**For the Defendant:**
Law Offices of Michael J. Regan
982 Montauk Highway, Suite 2
Bayport, NY 11705
By: Michael J. Regan, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Vincent Cortese ("Plaintiff" or "Cortese") brought the present putative class

action against Defendant Edge Solutions, Inc. ("Defendant" or"Edge") alleging various

violations of the Federal "Credit Repair Organizations Act" and the New York General Business Law. Presently before the Court is the Defendant's motion for summary judgment, which turns on whether Edge is a "credit repair organization" as defined in the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq. ("CROA" or the "Act").[1] For the reasons set forth below, the motion is denied.

*Background*

The following material facts, drawn from the parties' summary judgment submissions, are undisputed unless otherwise noted.

Edge Solutions is a New York corporation. After having spoken with Plaintiff on the telephone regarding Plaintiff's indebtedness, Edge sent Plaintiff an application package and forms for a program offered by Edge known as the Debt Melt Down Program (the "Program"). The package included the Debt Melt Down Program Agreement Letter (the "Agreement") along with other documentation explaining the program. On February 26, 2001, Plaintiff signed the Agreement and the other documents required for participation in the Debt Melt Down Program.

The Debt Melt Down Program Letter Agreement describes the Program as "structured in a way to eliminate your debt over time through settlement arrangements with your creditors." Under the program, Cortese was to set aside $500 per month for the program, which amount would be automatically deducted from his bank account each month.

---

[1] Although Defendant's notice of motion states it seeks summary judgment on "all claims" asserted against Edge, Defendant's Memorandum of Law addresses only the Credit Repair Organizations Act claims. The Court shall likewise address only Plaintiff's CROA claims. To the extent Defendant seeks summary judgment on the state law claims, the motion is denied without prejudice for failure to comply with Local Rule 7.1. Said Local Rule requires that all motions be supported by memoranda of law which set forth the points and authorities relied on in support of the motion.

After three monthly payments were made, Edge was to establish a bank account in Cortese's name and use the account to pay down Cortese's debt.[2] Edge was to use its best efforts to negotiate a reduction in the principal balance of the credit obligations included in the program.[3] Edge was then responsible for issuing checks and paying fees to the creditors on Cortese's behalf. The Agreement expressly provided that it was Cortese's responsibility to make the agreed upon monthly payment and that the failure to do so can jeopardize agreed upon settlements. The Agreement states that for its services, Edge was entitled to 40% of the actual savings realized by Cortese through these negotiations with actual savings defined as "the full balance owed the creditor less the settlement amount." Plaintiff claims, however, that Edge took "substantial portions of each payment made by Plaintiff as fees."

The Agreement also contained the following provisions:

> <u>CREDITOR ACTION AND CREDIT RATING DISCLAIMER</u>
> It is understood that no representation about any aspect of your credit rating can be made. Depending upon circumstances, credit can be enhanced, damaged, or not be altered, but in any case, it is beyond the control or scope of this program. It is also understood that Edge Solutions Inc. will make its best efforts to keep creditor communication and reaction, which may in some extreme cases include legal action against you to a minimum but cannot guarantee or assure such communication or reaction. . . .

---

[2] According the Agreement the first two of the monthly payments were to be held by Edge as a retainer, to be disbursed back only upon successful completion of the program.

[3] The Agreement explicitly excluded secured debts such as mortgages and car loans from Edge's restructuring efforts.

> DEBT FREE LIFE MEMBERSHIP AND COACHING PROGRAM
>
> The Debt Free Life Membership and Coaching Program is a service that is included in your Debt Melt Down Program. The cost of the program, $49.95 per month billed every month you are in the program, is figured into your program monthly payment stated above. You are not obligated to any additional monies into the Program for this service beyond your planned monthly payment. The intent of the program is to enhance program performance and to educate you, the client, to assure present and future success. The program includes, but is not limited to, scheduled coaching sessions as prescribed by your Financial Coach, the Money Mastery educational kit and workshop, [and] a regular newsletter containing valuable information about combating debt problems and building future wealth . . . .
>
> POST DEBT MELT DOWN™ PROCEDURES
>
> . . . If the fee paid to Edge was $600.00 or greater, you are entitled to participate in The Post Closing Credit Restoration Program. The purpose of this program is to assure that your credit reports properly reflect the settlement and paid accounts that involved this program. This program is voluntary for you and its success is dependent upon your proper participation and follow through as dictated. Edge Solutions Inc. cannot guarantee any specific results with regard to this program.

Among other things, the package also included a letter entitled "How The Debt Melt Down Program Works." This letter explains, in paragraph 4, that "[t]his program cannot make any assurances as to the state of your credit while on this program. It is likely that your credit score and rating will deteriorate while on the program. Upon completion of the program, Edge will work with you for 12 months in a best effort rehabilitation of your credit rating." Plaintiff signed this letter on February 26, 2001. At the bottom of the letter, just above Plaintiff's signature is a sentence which reads "I have read, understand and agree to the above terms of this program."

Also in the package was a three page article entitled "How To Instantly Stop Harassing

Calls and Letters From Third Party Bill Collectors" and a "Dear Customer" letter. The article states that you can stop unwanted phone calls and letters by invoking the fair Credit Collection Practices Act. After briefly describing the Act, the Articles goes on to state: "If you invoke the law very early . . . you may prevent an inquiry from a collection agency even showing up on your credit file or a note indicating that the account was turned over to outside collections. . . . This is good damage control for your credit history since either notation on your report would be considered very negative by a potential future lender." The "Dear Customer" letter states in part, "We will make every attempt to minimize any damage to your credit while you are on the program, though it is probable for some deterioration to occur. This is not unusual and we will help modify it upon completion of the program."

Cortese has submitted an affidavit stating that, based on Edge's representations, he believed that Edge's services would "result in a clean credit report at the end of their process" and "Edge's ability to repair any credit blemishes that [he] might have through the use of their 'Post Closing Credit Restoration Program' was a big reason that [he] decided to sign a contract with Edge."

Having agreed to the terms of the Debt Melt Down Program, Cortese was accepted into the program. Although he participated for about two years, he did not complete the Program for alleged reasons not relevant here. As a result of his non-completion of the Debt Melt Down Program, he was not eligible for the Post Closing Restoration Program.

Cortese commenced this action as a purported class action. In his complaint he alleges, with respect to CROA, that Edge is a credit repair organization within the meaning of the Act and that Edge violated CROA by (1) charging a fee in advance of performing services, in

contravention of 15 U.S.C. § 1679b(b), and (2) failing to provide the written statements required by 15 U.S.C. § 1679c.

*Discussion*

**I. Standard for Summary Judgment**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v.*

*U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in its pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

## II.  The Credit Repair Organizations Act ("CROA") In General

CROA was enacted in 1996 as part of an amendment to the Consumer Credit Protection Act**,** 15 U.S.C. § 1601 et seq.  CROA is a consumer protection statute designed to prevent fraud and abuses caused by credit repair organizations.  Generally, the credit repair business "involves the marketing of credit repair services to consumers whose consumer reports contain adverse information that interferes with their ability to obtain credit.  According to the Federal Trade Commission ("FTC"), these businesses through advertisements and oral representations, lead consumers to believe that adverse information in their consumer reports can be deleted or modified regardless of its accuracy. . . . [S]uch representations by credit repair clinics are often misleading, and consumers, mostly low- and moderate-income individuals, are cheated out of the money they paid for the service." Consumer Reporting Reform Act of 1994, H.R. Rep.  No. 103-496, 1994 WL 164513 (1994); *see also* Sen Rpt. 103-209 (Dec. 9, 1993); 15 U.S.C. § 1679(a).

The express purposes of  CROA are:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with information necessary to make an informed decision regarding the purchase of such services; and
> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679(b).

In enacting the Consumer Credit Protection Act, of which CROA is a part, Congress intended for courts to broadly construe its provisions in accordance with its remedial purpose. *See Brothers v. First Leasing,* 724 F.2d 789, 793 (9th Cir. 1984). Moreover, courts should construe consumer protection statutes "liberally" in favor of consumers. *Bizier v. Globe Fin. Serv. Inc.,* 654 F.2d 1, 3 (1st Cir. 1981).

The CROA defines a "credit repair organization" as:

> (A) . . . any person who uses any instrumentality of interstate commerce or the mails to sell, provide or perform (or represent that such person can or will sell, provide or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of –
> (i) improving any consumer's credit record, credit history, or credit rating; or
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i) . . . .

15 U.S.C. § 1679a(3). The definition also provides for specific exclusions not applicable here. *See* 15 U.S.C. § 1679a(3)(B).

### III. The Parties' Contentions

Edge "does not dispute that it uses instrumentalities of interstate commerce to sell, provide or perform services to consumers in exchange for valuable consideration." Mem. In Supp. of Defendant Edge Solutions Inc.'s Motion for Summary Judgment ("Def. Mem.") at 3. Rather, Edge's position is that it never provided services or advice about services designed to improve a consumer's credit record, credit history, or credit rating. *See id.* Edge points to the fact that in its Debt Melt Down Program package it specifically states Edge would be dealing with Plaintiff's creditors - not credit reporting agencies. Additionally, Edge points to the fact that

8

its Debt Melt Down Program expressly states, in three different documents, that "[i]t is understood that no representation about any aspect of your credit rating can be made. Depending upon circumstances, credit can be enhanced, damaged, or not be altered, but in any case, it is beyond the control or scope of this program."

Turning to its Post Closing Credit Restoration Program, Edge's argument is threefold. First, Edge argues that it receives no compensation for the services provided and therefore it does not meet one of the statutory requirement of a credit repair organization, viz. the receipt of valuable consideration. Second, it argues that "the services rendered under the Post Closing Credit Restoration Program are merely incidental to the services performed under the Debt Melt Down Program and are not designed to improve a client's credit record, credit history, or credit rating." Def. Mem. at 6-7. Finally, it argues that some of the Debt Melt Down participants, including Cortese, do not even qualify for the Post Closing Credit Restoration Program because they do not complete the Debt Melt Down Program.

In response, Plaintiff points out that the definition of credit repair agency is very broad and includes even the implied purpose of improving a credit rating. Plaintiff focuses on Edge's use of the term "rehabilitate" and their promise that they would "assure that your credit reports properly reflect the settlement and paid accounts involved in this program." *See* Mem. in Response to Defendant's Motion for Summary Judgment ("Pl. Mem.") at 6-8. Plaintiff argues that Edge did receive consideration because participants in the Debt Melt Down Program "were required to purchase the Post Closing Credit Restoration program by paying the Defendant $600 or more." *Id.* at 8. According to the Plaintiff, "the issue of whether Edge Solutions' acceptance of substantial payments in advance in return for its promise to provide Plaintiff with the "Post-

9

Closing Credit Restoration Program" causes Defendant to fall within CROA's definition of a credit repair organization is a material issue of fact to be decided by the jury." Pl. Mem. at 2.

**IV. Edge Meets the Statutory Definition of Credit Repair Organization**

As set forth above, credit repair organizations under CROA are those entities that "sell, provide or perform (or represent that such person can or will sell, provide or perform) any service . . . . for the express or implied purpose of (I) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (I) . . . ." This statutory definition covers not only the actual provision of credit repair services but the representation that any entity can or will provide such services. *See Parker v. 1-800 Bar None, A Financial Corp.,* 2002 U.S. Dist. Lexis 2139 *9-10 (N.D. Ill. 2002). In this case, Plaintiff's claim is premised upon the representations made by Edge. Thus, the Court shall focus on those representations.

Insofar as Edge's Debt Melt Down Program is a strictly a debt management plan, it is outside the scope of CROA's definition of a credit repair organization. As Edge correctly points out, its literature clearly states, more than once, that "no representation about any aspect of your credit rating can be made. Depending upon circumstances, credit can be enhanced, damaged, or not be altered, but in any case, it is beyond the control or scope of this program." The debt management aspect of the Melt Down Your Debt Program contains no representations with respect to credit repair. *See Plattner v. Edge Solutions, Inc.,* 422 F. Supp. 2d 969, 973 (N.D. Ill. 2006). Indeed, Plaintiff seems to concede as much as his argument focuses solely on Edge's Post-Closing Credit Restoration Program. It is this component to which the Court now turns its

attention.[4]

The Agreement signed by Plaintiff describes the purpose of the Post Closing Credit Restoration Program as "to assure that your credit reports properly reflect the settlement and paid accounts that involved this program." The letter entitled "How The Debt Melt Down Program Work's," states, however, in an apparent reference to the Post Closing Program, that "[u]pon completion of the program, Edge will work with you for 12 months in a best effort rehabilitation of your credit rating."

In discussing whether the Post Closing Credit Restoration Program brings Edge within CROA's definition of credit repair organization, it is important to reiterate that the definition covers implied as well as express representations of "improving any consumer's credit record, credit history, or credit rating;" or "providing advice or assistance to any consumer with regard to" improving their credit record, credit history or credit rating." At the very least, the Post Closing Program implies it will improve the client's credit record, credit history or credit rating.

First, there is the use of the words of "rehabilitate" and "restoration". "To rehabilitate" is defined as "to restore to good condition, operation or management;" or "to reestablish the good reputation of ." Dictionary.com Unabridged. To restore is defined as "a return of something to a former, original, normal, or unimpaired condition." *Id.* Like restore and rehabilitate, repair is defined as "to restore to a good or sound condition after decay or damage." *Id.*

Second, are the representations that deterioration of credit is not unusual during the Debt Melt Down Program and that Edge would "help modify it upon completion of the program."

---

[4] Plaintiff does not argue that Edge's Debt Free Life Membership and Coaching Program brings Edge within the definition of a credit repair organization. Accordingly, the Court shall not address that aspect of the Debt Melt Down Program.

Again, given that CROA's definition of credit repair organization includes those persons or entities represent they will provide a service "for the express or *implied* purpose of improving any consumer's credit record, credit history, or credit rating," (emphasis added), Edge's Post Closing Program meets that portion of the definition.

Edge argues, however, relying on the decision in its favor in *Plattner*, that the services rendered under the Post Closing Credit Restoration Program are merely incidental to the services performed under the Debt Melt Down Program and they are not designed to improve a client's credit record, credit history, or credit rating; thus they fall without the ambit of CROA. In *Plattner,* the Court examined Edge's Post Closing Credit Restoration Program and concluded that the *overall* purpose of Edge's Debt Melt Down Program "is not to improve a participant's credit score but rather to help a participant settle his debt. Even an unsophisticated debtor reviewing the program documents could not be left with the impression that Edge was offering to improve his credit except insofar as paying one's debts is likely, ultimately, to have that effect." 422 F. Supp. 2d at 976. This Court respectfully declines to follow *Plattner*.

First, just prior to reaching that conclusion, the *Plattner* court acknowledged that "[t]he express purpose of the Post Closing Credit Restoration Program is merely to help a participant in the Debt Meltdown Program repair any damage done to his credit as a result of his participation in the Program." *Id.* CROA's definition does not address the cause of the "poor" credit rating or the cause of the need for credit repair. Moreover, there is nothing in CROA's definition of credit repair organization that would lead this Court to conclude the credit repair services must be the principle or only services of the organization at issue. Indeed, there is authority in this District that representations by an entity that they would re-establish their client's spotty credit

report are sufficient to bring the entity within CROA's definition even though such representations are not the focus of the organization. *See Limpert v. Cambridge Credit Counseling Corporation,* 328 F. Supp. 2d 360, 364-65 (E.D.N.Y. 2004). *But see Hillis v. Equifax Consumer Servs. Inc.,* 237 F.R.D. 491 (N.D. Ga. 2006) (limiting CROA's reach to entities whose focus is the improvement or repair of a consumer's credit record).

Edge further argues that it fails to meet CROA's definition of a credit repair organization because it receives no compensation for the services provided to any client in the program. However, as Plaintiff aptly points out, eligibility for the program was limited to Debt Melt Down participants who had paid Edge at least $600. It is at least a question of fact as to whether Edge received valuable consideration. *See generally Parker,* 2002 U.S. Dist. Lexis 2139 at *11-12.

That Cortese was not eligible for participation in the Post Closing Credit Restoration Program does not affect whether Edge is a credit repair organization. CROA "does not require an entity to actually 'provide' the services listed, . . . the entity need only 'represent' that it can or will provide such services." *Id.* at *10.

### *Conclusion*

For the reasons set forth herein, Defendant's motion for summary judgement is denied.

Dated: Central Islip, New York
      September 24, 2007

                                            /s/
                                            Denis R, Hurley
                                            Senior District Judge